

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN 11

GROVER SELLERS
ATTORNEY GENERAL

Honorable Coke R. Stevenson
Governor of Texas
Austin, Texas

Dear Governor Stevenson:

Opinion No. O-6686

Re: Status of Texas Unemployment Compensation Benefits upon receipt of supplemental payments made by the Federal Government

We have your request for an opinion of this department upon the questions presented in a telegram from Senator Walter F. George, Chairman of the Senate Finance Committee of the United States Senate, which telegram reads as follows:

"The Bill S1274 provides for Federal Government supplementing amount and duration of State unemployment benefits by means of voluntary agreement between State and Federal government. If State does not wish to enter in such agreement, the Federal government will make such supplementary payments directly. Would appreciate your immediate reply as to how your Attorney General or Legal Department construes your State law. (1) Can your State enter into such agreement with Federal government without resulting in the State payment being partially or totally reduced by the amount of the supplementary Federal payment? (2) If your State does not enter into such an agreement would Federal supplementary payments result in reduction of the State amount? In brief will your State under existing law be required to credit any payments made by Federal government against the unemployment compensation benefits paid under your State law. Please advise by telegram collect."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Coke R. Stevenson, page 2

The first question presented is this:

"Can your State enter into such agreement with
Federal government without resulting in the State
payment being partially or totally reduced by the
amount of the supplementary Federal payment?"

In answering this question, the first problem presented is the
language of Article 5221b, Section 3 (e) (3) of Vernon's Re-
vised Civil Statutes, which reads as follows:

"An individual shall be disqualified for benefits:

    (e)  For any benefit period with respect
          to which he is receiving or has re-
          ceived remuneration in the form of:

          (3)  Old Age Benefits under
                Title II of the Social
                Security Act as amended,
                or similar payments un-
                der any Act of Congress,
                or a State Legislature,
                or employer pension plan,
                provided, that if such
                remuneration is less than
                the benefits which would
                otherwise be due under this
                Act, he shall be entitled
                to receive for such bene-
                fit period, if otherwise
                eligible, benefits reduced
                by the amount of such re-
                muneration."

The language of the quoted section is involved to the extent
that if the payments under S. 1274, commonly known as the Kilgore
Bill, are "similar payments", as that term is used above, the
supplemental payments under the Kilgore Bill would be deducti-
ble from unemployment compensation benefits which are provided
in the Texas Unemployment Compensation Act. A similar question
was passed upon by this department in opinion No. 0-4393 and
Opinion No. 0-5064. Opinion No. 0-4393 holds in effect that
War Displacement Benefits, which were designed to be payments
supplemental to regular state unemployment benefits in the same
fashion as the supplemental benefits provided for in S. 1274,
"are within the prohibition of Section 3 (e) (3)." However, the

Honorable Coke R. Stevenson, page 3

subsequent opinion No. 0-5064 substantially modifies this holding in its interpretation of Section 3 (e) (3). The latter opinion, No. 0-5064, rules that Old Age Assistance payments made by the Texas Department of Public Welfare differ basically from Old Age Benefits paid under Title II of the Social Security Act, and are not "similar payments" within the meaning of Section 3 (e) (3). If, as concluded in the latter opinion, State Old Age Assistance payments are not payments similar to Old Age Benefits, it is more apparent that the supplemental payments made under the Kilgore Bill would not be "similar payments" to Old Age Benefits. In other words, there is an even wider distinction between supplemental unemployment benefits and Social Security payments than there is between State Old Age Assistance and Social Security payments.

The Kilgore Bill provides merely for supplementing payments presently provided for under the State Unemployment Compensation Law, such supplementary payments to be paid for exclusively out of Federal funds.

The authority of the Texas Unemployment Compensation Commission to make such supplementary payments out of Federal funds is supported by the first part of opinion No. 0-4393, which is referred to for an exhaustive analysis of this question.

The Forty-ninth Legislature enacted an amendment under Section 15-A of Article 5221b which sheds additional light on this question, and a portion of this amendment is quoted below:

"(b)  The Commission is also authorized to enter into arrangements with the appropriate agencies of other States or the Federal Government whereby potential rights to benefits accumulated under the unemployment compensation laws of one or more States or under one or more such laws of the Federal Government, or both, may constitute the basis for the payment of benefits through a single appropriate agency under terms which the Commission finds will be fair and reasonable as to all affected interests and will not result in any substantial loss to the fund."

Honorable Coke R. Stevenson, page 4

This language indicates that the Legislature not only intended to enlarge upon the powers of the Commission to make reciprocal arrangements with other States, but that it also contemplated the possibility of making arrangements with the Federal government of the same type that are provided for in the Kilgore Bill.

There is another provision of the Texas Unemployment Compensation Act which we have not overlooked, which is 15 (g) (5) (B) of Article 5221b and reads as follows:

"(5)  The term 'employment' shall not include:

(B)  Service with respect to which unemployment compensation is payable under an Unemployment Compensation System established by an Act of Congress; provided that the Commission is hereby authorized to enter into agreements with the proper agencies under such Act of Congress, . . . to provide reciprocal treatment to individuals who have, after acquiring potential rights to benefits under this Act, acquired rights to unemployment compensation under such Act of Congress, or who have, after acquiring potential rights to unemployment compensation under such Act of Congress, acquired rights to benefits under this Act;"

It appears thus that this section is not applicable for three reasons. First, this subsection relates primarily to tax liability and the resultant establishment of wage credits, and otherwise has little application to the payment of benefits; second, the supplementary benefits provided in the Kilgore Bill could hardly be construed to include an "Unemployment Compensation system"; third, the proviso in the above section would permit the State to enter into an agreement which would permit the payment of benefits as provided under the Kilgore Bill.

It is apparent from the foregoing that we are of the opinion that such payments as provided in the Kilgore Bill may be made under the Texas Unemployment Compensation Act "without resulting in the State payment being partially or totally reduced by the amount of the supplementary Federal payment".

Honorable Coke R. Stevenson, page 5

Passing now to the second question presented in the telegram of Senator George, which is:

"If your State does not enter into such an agreement, would Federal supplementary payments result in reduction of the State amount?"

The same principles that are involved in question No. 2 are involved in question No. 1 and our answer is the same, that is, Federal supplementary payments would not result in reduction of the State amount even though the State did not enter into such an agreement as provided for in the Kilgore Bill.

We trust that the foregoing satisfactorily answers your inquiry.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By    L. P. Lollar
Assistant

By    Robert O. Koch
Assistant

ROK/JCP

APPROVED SEP 6, 1945

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED OPINION COMMITTEE BY BWB CHAIRMAN